REDMANN, Judge.
Plaintiff engineer appeals from a judgment rejecting his demand for additional engineering fees. The questions are of interpretation of contracts.
Plaintiff was employed by two written agreements of October 23, 1964, to do the engineering for a new major street (Earhart boulevard extension) that Jefferson parish hoped to construct. Of the planned six segments of the street, three were and three were not constructed. The engineering agreements provided for fees fixed in percentages of estimated and actual construction costs (plus cost plus 110% for certain elements of the work).
The agreement also provided that the fee for revisions of plans would be cost plus 110%, and when revisions of 83% of the preliminary plans became necessary, defendant sought some other fee arrangement (or it would exercise its right to cancel all agreements). The final result was a letter agreement of May 24, 1972, the meaning of which is one of the principal issues.
The other, related [1] issue is the effect of a provision for revising estimated construc *773 tion costs, upon which fees are first based, “as more accurate cost information becomes available and corresponding adjustments in partial payments shall be made.”
We first dispose of the latter issue.
An engineer’s best estimate of a project’s construction cost might be significantly lower or higher than the final price agreed upon with a contractor, even in the absence of monetary inflation. If the engineer’s fee for preliminary plans is fixed at a percentage of estimated construction cost without final adjustment, the engineer is forced into a conflict of interest: the higher he estimates costs, the higher his fee; yet one who underestimates, to avoid serving himself rather than his client, deprives himself of a portion of a fair fee. The practice of adjusting fees to actual cost, after preliminarily fixing and paying them on estimated cost, is an equitable insurance that neither the engineer nor the client will be affected unfairly by an erroneous estimate.
But all that the adjustment to actual cost is designed to do is to correct the inevitable inexactness of even a precise estimate: it is not designed to increase the engineer’s already-paid fees because of inflation. And that is our appreciation of the trial judge’s resolution of this issue: plaintiff seeks more money for work paid for long ago on the basis of correct estimates of cost, not because those estimates have proven wrong and unfair to the engineer but because inflation continues to increase estimated costs of projects that are not being constructed. Certainly if a widespread recession reduced estimated costs, plaintiff would not owe a refund on the fees it was paid. The pay that plaintiff received, say, in 1968 was 1968 dollars, based on 1968 dollar cost estimates that were (insofar as shown) free from significant error, and the fact that 1976 estimates are higher in number of inflated 1976 dollars does not entitle the engineer paid in 1968 dollars to more money for his 1968 work.
Thus, irrespective of the May 1972 letter, on the project portions that were never constructed, plaintiff is not entitled to more money.
We second treat the issue of the meaning of the May 1972 letter, written by defendant to plaintiff. That letter’s basic purpose is clear: speaking of the parties’ “total disagreement relative to the fees” resulting from the necessity for revising 83% of the preliminary plans, it premised “we should definitely resolve our differences at this time, or terminate our agreement.” The letter then set forth new rules governing fees. Because the alternative was the exercise by defendant of the right to terminate all contracts, plaintiff did accede to the demands of that letter and it became the contract of the, parties.
The letter’s key provisions are:
(1) The Engineer has established the percentage of the preliminary plans which required revisions. The Parish will pay to him one and one quarter percent of the construction cost times the percentage referred to above, for the preliminary plan revisions.
(2) The Engineer and the Parish have agreed ori which portion of the fees paid for the original preliminary plans are to be allocated to the project now contemplated by the Highway Department.
(3) In arriving at the adjusted fee for the preliminary plans (the intention of the contract for this portion is one and one-quarter percent) the amounts paid under 1 and 2 above shall be added together. If the sum of 1 and 2 is less than one and one-quarter percent of the construction cost, the difference shall be paid to the engineer. If it is greater no adjustment will be made.
The dispute centers on the meaning of paragraph (2).
*774 Plaintiff would fix the “portion of the fees paid for the original preliminary plans . allocated to the project” by mathematics: since 83% of the preliminary plans required revision (as “the Engineer has established,” according to paragraph (1), and defendant accepted), only 17% of the cost [of some part[2]] of the osiginal preliminary plans should be allocated to the revised project.
Plaintiff’s argument is inconsistent with paragraph (3) and the then-known reality of inflation. Paragraph (3) expressly and essentially anticipates that the sum of payments under paragraphs (1) and (2) could exceed 1.25% of post-1972 construction costs. It is not reasonably possible for that to be anticipated, if paragraph (2) envisioned only 17% of 1.25% of 1966 cost estimates; estimates rose from $33,800,000 to $58,700,000 and' it would make no sense whatsoever to assume that 17% of a fee based on 1966 estimates plus 83% of a fee based on 1972 costs could total over 100% of a fee based on 1972 costs. If paragraph (2) meant 17% of the 1960s fees, then all of (1), (2) and (3) are pointless because in every case paragraph (3) would have to be invoked to increase the total fees to 1.25% of 1972 fees, and the net effect in every case would be a fee of 1.25% of 1972 construction cost. Thus paragraph (2), in referring to the “portion” which the parties “have agreed” to allocate, could not have intended the mathematical percentage difference that plaintiff argues.
Defendant’s position is much more plausible. Defendant argues that the portion which paragraph (2) recites “the Engineer and the Parish have agreed” is allocable was that set forth in an attachment to its earlier letter of August 1971 (in which plaintiff did not at the time concur). Defendant’s 1971 letter recited “We had previously agreed on which portion of the original preliminary fee would be allocated to the various projects in this program.” That allocation attributed a total of $247,918.07 to usable plans (and $180,398.06 to “abandoned plans”).
That 1971 letter may have been in error when it recited that plaintiff had agreed to the allocations on the attachment, but it is fairly obvious that that is the only “agreement” that either of the parties thought they had on allocation (because the agreement that 83% of the work had to be revised cannot, consistently with paragraph (3), be the allocation agreement). The May 1972 .letter, when written by defendant, could also have been in error in asserting in paragraph (2) that the parties “have agreed” on an allocation: but, when accepted by plaintiff, that letter itself constituted the agreement by plaintiff that the allocation of the 1971 letter would govern.
Affirmed.

. The real dispute as to the May 1972 letter is related because it is not over payment for the 83% of work that had to be revised. For that 83% the letter provided for the full 1.25% fee. The dispute is over payment for the 17% that was done and paid for in the mid-1960s. Thus the two disputes are basically one. Plaintiff wants 1.25% of 100% of the inflated cost estimates for the 17% it did years ago. That position is hard to accept because it would have been so easy to state, and the language actually used (i. e., 1.25% multiplied by the varying percentages) is comparatively so complex. The ultimate question here too is: should *773 plaintiff to be paid a gain for the salvaged part of his original preliminary plans, for which he was paid 1.25% of estimates as of the time he did those plans, merely because inflation raised costs as of the time plaintiff did a part-revision?

. Actually plaintiff would not credit 17% of the entire cost of original preliminary plans, but only 17% of the amount defendant treats as for usable original plans.